**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Chapter 11 |
| Aspirity Energy, LLC | BKY 17-41991 (KHS) |
| Debtor. | |

**STIPULATION AND REQUEST
FOR ENTRY OF PROPOSED ORDER
AUTHORIZING SECOND INTERIM USE
OF CASH COLLATERAL OF EXELON GENERATION
COMPANY, LLC AND GRANTING ADEQUATE PROTECTION**

Upon the *Notice of Expedited Hearing and Motion for Approval to Use Cash Collateral and for Adequate Protection* (the "Cash Collateral Motion") [Docket No. 7] (as amended by Docket No. 9) filed by Aspirity Energy, LLC ("Aspirity" or "Debtor") for use of the Cash Collateral (as defined herein) of Exelon Generation Company, LLC ("Exelon," and together with Aspirity, the "Parties") and taking into consideration the representations of the Parties as contained herein; the Parties respectfully request the Court enter an order in substantially the form attached here as Exhibit 2 (the "Proposed Order").

The Parties have agreed and stipulated to the below terms in support of their request for entry of the Proposed Order:

**IT IS HEREBY STIPULATED AS FOLLOWS:**

1. The Debtor is an energy service company (ESCO) which provides energy to residential and small commercial ("retail") customers located in the transmission region coordinated by PJM Interconnection. This region (the "PJM Region") includes customers located in all or parts of Delaware, Illinois, Indiana, Kentucky, Maryland, Michigan, New Jersey, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, West Virginia, and the District of

Columbia.  The Debtor is the energy provider for several thousand retail customers in the PJM Region.

2. The Debtor does not have power generation capabilities itself and therefore Aspirity contracted with Exelon to provide all the electricity needed to meet Aspirity's customers' needs.  On March 30, 2016, Exelon and the Debtor entered into a 3 year, full requirements preferred supply agreement for this purpose.

3. Aspirity's obligations under the supply agreement and all related agreements[1] (collectively and as further defined in footnote 1, the "Obligation Documents") are secured by, among other things, all Inventory, Customer Contracts, Receivables, Controlled Accounts, all money, funds, checks, instruments, deposits, investments, securities and other amounts or investments therein, and all renewals, replacements, additions and substitutions for the foregoing; all of the proceeds of the foregoing; and all books, records, contract rights and general intangibles arising from or relating to the foregoing (collectively, the "Collateral").[2]  Exelon holds validly perfected and enforceable liens on and security interests in the Collateral.

4. As of June 30, 2017 (the "Petition Date"), total amounts due and owing by the Debtor to Exelon under the Obligation Documents and secured by the Collateral were no less than $1,775,314.48, subject to the Debtor's right to contest the amount of the claim.[3]  Also

---

[1] The relevant documents creating the working and security relationships between Aspirity and Exelon are the (i) the ISDA Master Agreement, dated as of March 30, 2016, including the Schedule, Credit Support Annex, Power Annex, Gas Annex, and Base Confirmation (each as defined in the ISDA Master Agreement), by and between Aspirity and Exelon (as amended and, collectively, the "ISDA Master Agreement"), (ii) the Security Agreement, dated as of March 30, 2016, between Aspirity and Exelon (as amended, the "Security Agreement"), and (iii) the Pledge Agreement, dated as of March 30, 2016, between Exelon and Aspirity's parent Aspirity Holdings, LLC (as amended, the "Pledge Agreement") (the ISDA Master Agreement, Security Agreement and the Pledge Agreement collectively, the "Obligation Documents").  On information and belief, the Debtor has copies of the Obligation Documents.

[2] Each as defined in the Security Agreement and/or Pledge Agreement.

[3] Amount subject to adjustment as final calculations occur and additional obligations confirmed related to continued supply.

subject to the Debtor's right to contest the amount of the claim, Exelon anticipates that it will be owed an additional $650,000-$800,000 for the month of July and, following termination of the Obligation Documents, will be owed an additional amount of no less than $2,000,000 in mark to market damages and collateral obligations posted to electric distribution companies and PJM Interconnection on Aspirity's behalf.

5. On July 5, 2017, the Debtor filed the Cash Collateral Motion by which the Debtor seeks to use the Collateral of Exelon including cash and other amounts on deposit or maintained in any account or accounts by the Debtor, any amounts generated by the collection of accounts receivable or other disposition of cash collateral, and the proceeds and products of each of the foregoing, in each instance cash collateral within the meaning of section 363(a) of the Bankruptcy Code ("Cash Collateral") to, among other things, pay for the usual, ordinary, customary, regular, and necessary post-petition expenses incurred in the ordinary course of the Debtor's businesses and for payment only of those prepetition claims approved and allowed by order of the Bankruptcy Court.

6. On July 10, 2017, the Parties jointly entered into the *Stipulated Order Authorizing Interim Use of Cash Collateral of Exelon Generation Company, LLC and Granting Adequate Protection* ("First Interim Stipulation") [Docket No. 15] which provided for use of Exelon's cash collateral through the date of the Final Cash Collateral Hearing (as defined therein), subject to certain governing provisions. Following a hearing on the Cash Collateral Motion on July 10, 2017, the Court entered an interim order that reflected the terms of the First Interim Stipulation [Docket No. 16].

7. On July 21, 2017, Exelon filed its *Objection to Debtor's Motion to Use Cash Collateral and for Adequate Protection* (the "Objection") [Docket No. 23].

8. The Parties agree that continued use of Cash Collateral on a second interim basis as set forth herein, in the Cash Collateral Motion, and in the budget attached hereto as Exhibit 1 (the "Budget") is necessary and appropriate and in the best interests of the Debtor, its estate, and its creditors. The Parties have engaged in arms'-length, good faith negotiations to arrive at an agreed upon this stipulation (the "Second Interim Stipulation") governing the use of Cash Collateral on a second interim basis.

9. In connection with the foregoing, the Parties have agreed, subject to approval by the Bankruptcy Court, for the Debtor to use Cash Collateral on an interim basis, pursuant to the terms and conditions contained herein. The Parties have agreed to a subsequent hearing on September 1, 2017, or the Court's next available hearing date thereafter (the "Third Cash Collateral Hearing"), to consider the Debtor' use of Cash Collateral on a continued basis beyond the date of the Third Cash Collateral Hearing.

**BASED ON THE FOREGOING, IT IS HEREBY STIPULATED AS FOLLOWS:**

10. Effective Date. This Second Interim Stipulation shall have no force or effect unless and until the date it is approved by the Bankruptcy Court (the "Effective Date").

11. Use of Cash Collateral. Upon the Effective Date, the Debtor is hereby authorized, on an interim basis subject to the terms and conditions of this Second Interim Stipulation, and in accordance with the Budget, to use Exelon's Cash Collateral in accordance with, and for the purposes, and in the amounts, set forth in the Budget.

12. Term of Use. The use of Cash Collateral as authorized herein extend through and including the date of the Third Cash Collateral Hearing, but any use of Cash

Collateral beyond such date of the Final Cash Collateral Hearing must be authorized by further order of the Bankruptcy Court.

13. Budget. Attached hereto as Exhibit 1 and incorporated by reference herein is the weekly expenses of the Debtor for the period encompassing the week of this hearing (the week ending July 28, 2017) and ending on September 1, 2017. The Debtor shall use the Cash Collateral in accordance with the Budget and this Second Interim Stipulation. The Debtor and Exelon may agree to a revised budget (a "Revised Budget") and file such Revised Budget with the Bankruptcy Court, at which time the Revised Budget shall become the Budget for purposes of this Second Interim Stipulation. Such Revised Budget shall not provide for any payments beyond the "Term of Use" specified herein.

14. Adequate Protection. As adequate protection for any diminution in the value of the Collateral resulting from the use of Cash Collateral, the imposition of the automatic stay under section 362 of the Bankruptcy Code,[4] or otherwise, Debtor is authorized to grant to Exelon a replacement lien in the Debtor's assets, which replacement lien shall have the same priority, dignity and effect as the pre-petition lien held by Exelon. Exelon's lack of adequate protection payments in this Second Interim Stipulation shall have no precedential effect as to Exelon's ability to seek such payments from the Debtor when use of Cash Collateral is sought on a future basis and Exelon reserves all rights related thereto. The assets excluded from the replacement lien are the Chapter 5 causes of action.

15. Financial Reporting. Upon request of Exelon and as otherwise required under the Obligation Documents, the Debtor shall provide Exelon all financial reports, budgets,

---

[4] Chapter 11 of Title 11 of the United States Code.

forecasts, evidence of insurance, balance sheets, income statements, and all other legal or financial documentation required to be provided under the aforementioned agreements.

16. <u>Limitation of Liability</u>.  In permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Second Interim Stipulation or the Obligation Documents, Exelon shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to or in connection with the Debtor's restructuring efforts or the operation or management of the Debtor. Furthermore, nothing in this Second Interim Stipulation shall in any way be construed or interpreted to impose or allow the imposition upon Exelon of any liability for any claims arising from the prepetition or post-petition activities of the Debtor and its affiliates (as defined in section 101(2) of the Bankruptcy Code).

17. <u>Termination of Use of Cash Collateral</u>.  The Debtor's right to use the Cash Collateral pursuant to the terms set forth in this Second Interim Stipulation shall terminate upon the earliest to occur of any of the following (each a "<u>Cash Collateral Termination Event</u>") that has not been waived by Exelon: (i.) the failure of the Debtor to comply with any term of or make any payment required under this Second Interim Stipulation; (ii.) unless the Court orders otherwise, the occurrence of September 1, 2017 without the Bankruptcy Court having held a hearing on the Debtor's continued use of Cash Collateral; (iii.) the dismissal of the Debtor's Chapter 11 case, the conversion of the Debtor's Chapter 11 case to a case under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee with expanded powers in the Debtor's Chapter 11 case; (iv.) any stay, reversal, vacatur, rescission or other modification of the terms of this Second Interim Stipulation not consented to by Exelon; (v.) entry of an order granting the

*Notice of Hearing and Motion of Exelon Generation Company, LLC for Relief from the*

*Automatic Stay and Order Finding Applicability of Safe Harbor Protections* [Docket No. 21]; or (vi.) the failure of the Debtor to pay any post-petition local, state, or federal taxes as they become due.

18. <u>Reservation of Debtor's Rights</u>.  Notwithstanding anything to the contrary herein, upon the occurrence of a Cash Collateral Termination Event, the Debtor may seek authority from the Bankruptcy Court to use the Cash Collateral on a non-consensual basis; provided that Exelon reserves all rights to object to such request.

19. <u>Reservation of Rights of All Parties-in-Interest</u>.  The interests, rights, and liens of all parties-in-interest in the Debtor's Chapter 11 case, including, without limitation, Exelon, as of the Petition Date are expressly preserved.  Nothing in this Second Interim Stipulation shall relieve the Debtor of any obligations under federal, state, or local police or regulatory laws or under 28 U.S.C. § 959(b).

20. <u>Waiver of Bankruptcy Rule 6004</u>.  This Second Interim Stipulation shall take effect immediately upon the Effective Date, and there shall be no stay of execution of effectiveness of this Second Interim Stipulation.  Any stay of the effectiveness of this Second Interim Stipulation under Bankruptcy Rule 6004 or otherwise is waived.

21. <u>Execution</u>.  This Second Interim Stipulation may be executed simultaneously in one or more counterparts, and by different parties hereto in separate counterparts, and with electronic or facsimile signatures being deemed originals, each of which when executed shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

22. <u>Headings</u>. The heading of any provision of this Second Interim Stipulation is intended only for convenience and shall not be construed to be or interpreted as a part, or limitation on the scope, of any such provision.

23. <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Second Interim Stipulation.

STEVEN B. NOSEK, P.A.

_____
Steven B. Nosek, (#79960)
Yvonne R. Doose, (#397066)
2855 Anthony Lane South, Suite 201
St. Anthony, MN 55418
Telephone: (612) 335-9171
Facsimile: (612) 789-2109
snosek@noseklawfirm.com
ydoose@noseklawfirm.com

*Attorneys for Debtor*

LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD.

/e/ James M. Jorissen
James M. Jorissen
Leonard, O'Brien, Spencer, Gale & Sayre, Ltd.
100 South Fifth Street, Suite 2500
Minneapolis, Minnesota 55402
Telephone: (612) 332-1030
Facsimile: (612) 332-2740
jjorissen@losgs.com

SIDLEY AUSTIN LLP

Michael T. Gustafson
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
mgustafson@sidley.com

*Attorneys for Exelon Generation Company, LLC*

# **EXHIBIT 1**

BUDGET

Case 17-41991    Doc 31    Filed 07/26/17    Entered 07/26/17 07:29:21    Desc Main
Document      Page 9 of 15

| week ending... | Week 1<br>7/14 | Week 2<br>7/21 | Week 3<br>7/28 | Week 4<br>8/4 | Week 5<br>8/11 | Week 6<br>8/18 | Week 7<br>8/25 | Week 8<br>9/1 |
|---|---|---|---|---|---|---|---|---|
| Payroll............................. | 17,492 | 0 | 17,492 | 0 | 0 | 17,492 | | 17,492 |
| Workers Comp............... | 0 | 0 | 0 | 0 | 800 | 0 | 0 | 0 |
| OpSolve............................. | 82,718 | 0 | 0 | 82,718 | 0 | 1,800 | 0 | 0 |
| Health Insurance.............. | 4,758 | 0 | 0 | 5,614 | 0 | 4,758 | 400 | 0 |
| Bank Fees........................... | 2,567 | 0 | 0 | 2,567 | 0 | 0 | 0 | 0 |
| Total | 107,535 | 0 | 17,492 | 90,899 | 800 | 24,050 | 400 | 17,492 |

## EXHIBIT 2

PROPOSED ORDER

# IN THE UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 11 |
| Aspirity Energy, LLC | BKY 17-41991 (KHS) |
| Debtor. | **INTERIM ORDER** |

The Motion of Aspirity Energy, LLC ("Debtor") for an Order granting second interim use of cash collateral and to grant adequate protection came on for hearing before the undersigned on the 26th day of July 2017. The Debtor and Exelon Generation Company, LLC ("Exelon") entered into the *Stipulation and Request for Entry of Proposed Order Authorizing Second Interim Use of Cash Collateral of Exelon Generation Company, LLC and Granting Adequate Protection* [Docket No. 25] (the "Stipulation"). For reasons stated orally and recorded in open court,

**IT IS ORDERED:**

1. Use of Cash Collateral. The Stipulation is approved and the Debtor is hereby authorized, on an interim basis subject to the terms and conditions of this Order, and in accordance with the Budget (as defined below), to use Exelon's Cash Collateral in accordance with, and for the purposes, and in the amounts, set forth in the Budget.

2. Term of Use. The use of Cash Collateral as authorized herein extends through and includes the date of the Third Cash Collateral Hearing (as defined in the Stipulation), but any use of Cash Collateral beyond such date of the Third Cash Collateral Hearing must be authorized by further order of the Bankruptcy Court.

3. Budget. Appearing below is the weekly expenses of the Debtor for the period encompassing the week of this hearing (the week ending July 28, 2017) and ending on

1

September 1, 2017 (the "Budget").  The Debtor shall use the Cash Collateral in accordance with the Budget and this Order.  The Debtor and Exelon may agree to a revised budget (a "Revised Budget") and file such Revised Budget with the Bankruptcy Court, at which time the Revised Budget shall become the Budget for purposes of this Order.  Such Revised Budget shall not provide for any payments beyond the "Term of Use" specified herein

| week ending... | Week 1 7/14 | Week 2 7/21 | Week 3 7/28 | Week 4 8/4 | Week 5 8/11 | Week 6 8/18 | Week 7 8/25 | Week 8 9/1 |
|---|---|---|---|---|---|---|---|---|
| Payroll | 17,492 | 0 | 17,492 | 0 | 0 | 17,492 |  | 17,492 |
| Workers Comp | 0 | 0 | 0 | 0 | 800 | 0 | 0 | 0 |
| OpSolve | 82,718 | 0 | 0 | 82,718 | 0 | 1,800 | 0 | 0 |
| Health Insurance | 4,758 | 0 | 0 | 5,614 | 0 | 4,758 | 400 | 0 |
| Bank Fees | 2,567 | 0 | 0 | 2,567 | 0 | 0 | 0 | 0 |
| Total | 107,535 | 0 | 17,492 | 90,899 | 800 | 24,050 | 400 | 17,492 |

    4.    Adequate Protection.  As adequate protection for any diminution in the value of the Collateral resulting from the use of Cash Collateral, the imposition of the automatic stay under section 362 of the Bankruptcy Code,[1] or otherwise, Debtor is authorized to grant to Exelon a replacement lien in the Debtor's assets, which replacement lien shall have the same priority, dignity and effect as the pre-petition lien held by Exelon.  Exelon's lack of adequate protection payments in this Order shall have no precedential effect as to Exelon's ability to seek such payments from the Debtor when use of Cash Collateral is sought on a future basis and Exelon reserves all rights related thereto.  The Debtor's assets excluded from the replacement lien are the Chapter 5 causes of action.

    5.    Financial Reporting.  Upon request of Exelon and as otherwise required under the supply agreement and all related agreements between the Debtor and Exelon (collectively the "Obligation Documents"), the Debtor shall provide Exelon all financial reports,

---

[1] Chapter 11 of Title 11 of the United States Code.

budgets, forecasts, evidence of insurance, balance sheets, income statements, and all other legal or financial documentation required to be provided under the aforementioned agreements.

6. <u>Limitation of Liability</u>.  In permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the Obligation Documents, Exelon shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to or in connection with the Debtor's restructuring efforts or the operation or management of the Debtor. Furthermore, nothing in this Order shall in any way be construed or interpreted to impose or allow the imposition upon Exelon of any liability for any claims arising from the prepetition or post-petition activities of the Debtor and its affiliates (as defined in section 101(2) of the Bankruptcy Code).

7. <u>Termination of Use of Cash Collateral</u>.  The Debtor's right to use the Cash Collateral pursuant to the terms set forth in this Order shall terminate upon the earliest to occur of any of the following (each a "<u>Cash Collateral Termination Event</u>") that has not been waived by Exelon: (i.) the failure of the Debtor to comply with any term of or make any payment required under this Order; (ii.) unless the Court orders otherwise, the occurrence of September 1, 2017 without the Bankruptcy Court having held a hearing on the Debtor's continued use of Cash Collateral; (iii.) the dismissal of the Debtor's Chapter 11 case, the conversion of the Debtor's Chapter 11 case to a case under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee with expanded powers in the Debtor's Chapter 11 case; (iv.) any stay, reversal, vacatur, rescission or other modification of the terms of this Second Interim Stipulation not consented to by Exelon; (v.) entry of an order granting the *Notice of Hearing and Motion of Exelon Generation Company, LLC for Relief from the Automatic Stay and Order Finding*

3

*Applicability of Safe Harbor Protections* [Docket No. 21]; or (vi.) the failure of the Debtor to pay any post-petition local, state, or federal taxes as they become due.

8. <u>Reservation of Debtor's Rights</u>.  Notwithstanding anything to the contrary herein, upon the occurrence of a Cash Collateral Termination Event, the Debtor may seek authority from the Bankruptcy Court to use the Cash Collateral on a non-consensual basis; provided that Exelon reserves all rights to object to such request.

9. <u>Reservation of Rights of All Parties-in-Interest</u>.  The interests, rights, and liens of all parties-in-interest in the Debtor's Chapter 11 case, including, without limitation, Exelon, as of the Petition Date are expressly preserved.  Nothing in this Order shall relieve the Debtor of any obligations under federal, state, or local police or regulatory laws or under 28 U.S.C. § 959(b).

10. <u>Waiver of Bankruptcy Rule 6004</u>.  This Order shall take effect immediately, and there shall be no stay of execution of effectiveness of this Order.  Any stay of the effectiveness of this Order under Bankruptcy Rule 6004 or otherwise is waived.

11. <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

12. A further hearing on the motion for an order authorizing the use of cash collateral shall be held on Friday, September 1, 2017, or the Court's next available hearing date thereafter at 9:00 a.m.

**Dated:** _____
                                                         **Kathleen H. Sanberg**
                                                         **Chief United States Bankruptcy Judge**